IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PETER J. LONG,

                Plaintiff,

v.

SANDRA HEISER, PETER STIEFVATER,
KELLY SALINAS, WAYNE OLSON,
RICHARD SCHNEITER and QUALA CHAMPAGNE,

                Defendants.

OPINION AND ORDER

17-cv-94-slc

---

Pro se prisoner and plaintiff Peter Long is proceeding on a First Amendment claim that defendants Sandra Heiser, Peter Stiefvater, Kelly Salinas, Wayne Olson, Richard Schneiter, and Quala Champagne issued or approved a conduct report against him in August 2016, and imposed a harsher punishment on him than other similarly-situated individuals, in retaliation for his filing of several inmate complaints. Before the court is defendants' motion for summary judgment. Dkt. 20. For the reasons stated below, I am granting this motion.

Although given an ample opportunity to do so, Long has failed to file any response to defendants' motion for summary judgment or proposed findings of fact. *See* dkt. 31 (granting plaintiff's request for a four-month extension of his response deadline). He also has failed to contact the court since November 9, 2018. Even so, defendants are not *entitled* to summary judgment in the absence of any opposition from Long; they still must satisfy the requirements of Rule 56(a).

This court's summary judgment procedures, which are attached to the December 22, 2017 preliminary pretrial conference order entered in this case, warn litigants that "[u]nless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed." Dkt. 14 at 19-20. *See also Abraham v. Wash. Grp. Int'l, Inc.*, 766 F.3d 735, 737 (7th Cir. 2014) ("[T]his Circuit has routinely held that a district court may strictly

enforce compliance with its local rules regarding summary judgment motions."); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630-31 (7th Cir. 2010) (holding that the district court did not err when it deemed the defendant's proposed findings of fact admitted and refused to consider additional facts for the plaintiff's failure to follow the local procedures on proposed findings of fact). Because plaintiff has failed to produce any evidence to establish the key elements of his claims, I am granting the motion and entering judgment in favor of defendants.

I find the following facts proposed by defendants to be material and undisputed:

**UNDISPUTED FACTS**

From September 9, 2015, to August 23, 2016, plaintiff Peter Long was incarcerated at Thompson Correctional Center, where some of the defendants are employed as correctional officers: Sandra Heiser is a sergeant, Peter Stiefvater is a captain, and Wayne Olson is the superintendent. Defendant Quala Champagne is the warden and defendant Richard Schneiter is the deputy warden of the Wisconsin Correctional Center System. Defendant Kelly Salinas is the inmate complaint examiner at the Kettle Moraine Correctional Institution.

On July 27, 2016, Thompson Correctional received a call from Lisa Kvalheim, the Human Resources Director at Generac, the company where Long was employed on work release. Kvalheim reported that Long was discovered using a cell phone by his supervisor. Kvalheim said that when Long was asked if he should be using the phone, Long answered "no." Sergeants Corrie and Raymond went to Generac to pick up Long and bring him back to the institution. When Long arrived back at Thompson, defendant Olson spoke with Long about the allegations. Long told Olson, "I made a poor choice but it was an emergency situation. I borrowed a phone."

After the discussion, Long returned to his housing unit. Olson then assigned defendant Heiser to investigate the allegations into Long's use of a cell phone and Long's explanation for it.

During the investigation, Long told Heiser that he had to use the phone for a "sewer emergency at one of his properties" because his father was "close to a nervous breakdown from stress that this emergency was causing him." However, Heiser listened to the recording of Long's telephone call with his father from the day before (July 26th) and found there was no mention of any sewer issues or other "emergencies." The only issue related to Long's properties mentioned in the call was a problem with a doorbell not functioning properly. It appeared from these records that Long had been running his business from a phone or phones at his work site at Generac. Heiser also reviewed other calls that Long made from Thompson, before his removal from his work-release position at Generac, and found numerous references to conversations that were not part of Thompson phone records. Most of the conversations related to Long's rental properties.

Before Long began his employment at Generac, he signed a work release agreement on November 6, 2015, acknowledging that work release was a privilege and that he must abide by all applicable administrative rules. Work rule #6 states that the prisoner shall not make or receive personal telephone calls; and work rule #12 states that the shall not receive cell phones. Long also signed an Acknowledgment of Rules and Conditions of Work Release Placement, which reads in relevant part that "the use of cell phones, telephones … is strictly prohibited."

Heiser spoke with Kvalheim, who stated that another employee at Generac had suspicions that had Long surreptitiously used his phone because he had received some random voicemail messages. When Kvalheim asked this employee directly if he had lent his phone to Long, the employee said "no." On August 18, 2016, Heiser again spoke with Long and directed

3

him to tell her who supplied him with the phone. Long refused to provide the name. When Heiser again directed Long to tell her who gave him the phone, he stated that he did not have to tell her and that "the superintendent said so." Heiser gave Long several more directives to name the person who provided him with the phone at Generac, but he continued to refuse and claimed the superintendent told him he did not have to name the person. To follow up, Heiser spoke with Superintendent Olson about Long's claim, and Olson informed Heiser that he did not authorize Long to withhold that information.

On August 23, 2016, Heiser concluded her investigation, finding that Long's actions violated both signed work release agreements and administrative rules. Heiser wrote conduct report no. 2735177 for Long's violations of Wisconsin Administrative Code § DOC 303.28, Disobeying Orders; § DOC 303.48, Possession of Electronic Communication Devise; § DOC 303.34, Unauthorized Forms of Communication; and § DOC 303.36, Enterprises and Fraud. In the conduct report, Heiser noted that due to the lack of information from Long, she had to attempt to gather information by other methods, which prolonged the investigatory process. Heiser also noted that it was of great concern that Long was able to convince an employee to lend him a phone or use the phone without the employee's knowledge.

Also on August 23, defendant Stiefvater placed Long on temporary lockup pending the outcome of the conduct report because of the severity of the claimed offenses. Long provided a statement admitting that he asked to borrow the cellphone from a regular Generac employee and stated that he used the cellphone to call his father about an issue he had with one of his properties. Long signed the notice of temporary lockup, indicating he received it.

TLU is a non-punitive status. An inmate's placement in TLU pending the outcome of a conduct report for violation of institution rules is standard operating procedure. TLU status

inmates are generally housed in a restrictive status housing unit because the inmate's presence in general population may impede the disciplinary action, be disruptive to the operation of the institution, create a danger to the physical safety of the inmate or another, and/or create a risk that the inmate shall try to escape. Because Thompson is a correctional center housing mainly community corrections inmates, it does not have a restrictive status unit on site. Therefore, any time an inmate is placed in TLU, he is transported to an institution that is equipped to house inmates in this status. In this case, Long was transported to the Oakhill Correctional Institution for placement in TLU.

On August 24, 2016, defendant Stiefvater contacted Captain Nick Redecker to discuss conduct report #2735177. Redecker approved the conduct report to proceed as a major rule violation and noted that Long's conduct created a risk of serious disruption at the facility or in the community. Stiefvater and Redecker then discussed possible dispositions for Long's alleged rule violations if Long did not contest the conduct report. Together, they came to the decision that 30 days disciplinary separation with a referral to the Program Review Committee would be appropriate.

Also on August 24, Stiefvater delivered a copy of the conduct report to Long at Oakhill. Stiefvater also provided a copy of the notice of major disciplinary hearing rights, waiver of contested major hearing, and waiver of time. The notice informed Long of his right to a hearing, or the option to choose not to contest the conduct report. At that time, Stiefvater had Long placed in a hearing room so he could review the conduct report and then discuss the hearing process without the noise and activities on the unit causing interruption. Stiefvater offered Long the disposition of 30 days disciplinary separation with a referral to the Program Review Committee, if Long chose to waive the hearing and admit guilt to either some or all of the

charges. Stiefvater informed Long that if he chose not to contest the conduct report and accepted the offered disposition, then he would not be able to appeal this decision. However, Stiefvater further advised Long that if he chose to contest the conduct report, he would be entitled to a disciplinary hearing and would be able to appeal the hearing officer or committee's decision.

Long chose to waive his right to a contested major disciplinary hearing, and he admitted he violated Wis. Admin. Code § DOC 303.28, Disobeying Orders, and § DOC 303.34, Unauthorized Forms of Communication. Long also checked the box on the waiver form noting that he understood his rights by accepting an uncontested major disposition and agreed to the disposition. Long then signed the conduct report agreeing to the disposition of disposition of 30 days disciplinary separation and referral to the Program Review Committee. The disposition was then approved by the security director or his designee.

Long filed two offender complaints with inmate complaint review system about the conduct report, in which he alleged he was retaliated against and denied equal protection because of the sanction imposed. Defendant Schneiter rejected the complaints as outside the scope of the inmate complaint review system under Wis. Admin. Code § DOC 310.08 and § DOC 310.11(5)(g). Long appealed the rejections, but defendant Champagne affirmed them. Defendants Olson, Salinas, Heiser, and Stiefvater had no involvement in that complaint process.

## ANALYSIS

I.  **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

of law." Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017).

## II. First Amendment Retaliation

To prevail on a First Amendment retaliation claim, a plaintiff must prove three things: (1) he was engaging in activity protected by the Constitution; (2) defendants' conduct was sufficiently adverse to deter a person of "ordinary firmness" from engaging in the protected activity in the future; and (3) defendants subjected plaintiff to adverse treatment because of plaintiff's constitutionally protected activity. *Gomez v. Randle*, 680 F.3d 859, 866-67 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 555-56 (7th Cir. 2009). As to the first element, Long alleged in his complaint that he filed several inmate complaints against various prison employees, including defendant Stiefvater. A prisoner has the constitutional right to complain about prison

conditions and file grievances.  *Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007); *Pearson v. Welborn*, 471 F.3d 732, 738 (7th Cir. 2006).  As to the second element, it is reasonable to infer that a conduct report that resulted in 30 days in restrictive confinement and a program review could deter a person of ordinary firmness from exercising his rights.  *Jackson v. Thurmer*, 748 F. Supp. 2d 990, 1003 (W.D. Wis. 2010) (placement in segregation for 45 days was sufficiently adverse to sustain First Amendment retaliation claim).  However, as defendants argue, Long has failed to present any evidence from which a reasonable jury could infer that any of them issued or approved the conduct report and 30 days disciplinary separation because he exercised his rights rather than because they believed that he should be disciplined for his alleged misconduct.

As I noted in the order screening Long's complaint, Long knows the drill on First Amendment retaliation claims, having recently traveled this path in *Long v. Hammer, et al.,* 16-cv-149-slc, in which I granted summary judgment against him on August 8, 2017.  *See* dkt. 58 in that case.  As Long is aware, he may not prove his claim with the allegations in his complaint, *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 692 (7th Cir. 2001), or his personal beliefs, *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007).

In this case, the only facts of record show that Long violated numerous work release and corrections rules related to telephone calls and cell phones and that Long admitted that he had disobeyed orders and used an unauthorized form of communication.  Long alleged in his complaint that he filed more than 13 inmate complaints reporting unfair treatment and harassment by correctional officers at Thompson, and that all of the defendants were aware of these complaints.  However, even if I were to assume that Long's complaints, his conduct report and the resulting discipline all occurred close in time—a fact that is not clear in this case—timing alone is insufficient to prove an unlawful motive.  *Springer v. Durflinger*, 518 F.3d 479, 485 (7th

Cir. 2008); *see also Sauzek v.Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second.") Moreover, mere speculation regarding defendants' allegedly retaliatory motives cannot create a genuine issue of material fact sufficient to survive a motion for summary judgment. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) (speculation regarding officers' motives cannot overcome contrary evidence that actions were benign); *Springer,* 518 F.3d at 484 ("collective hunch" about defendant's motives by itself will not survive motion for summary judgment); *Parrilla v. Beahm*, 2018 WL 3717026, at *6 (E.D. Wis. Aug. 3, 2018) (same). Accordingly, defendants are entitled to summary judgment with respect to plaintiff's First Amendment retaliation claims.

**ORDER**

IT IS ORDERED that the motion for summary judgment, dkt. 20, filed by defendants Sandra Heiser, Peter Stiefvater, Kelly Salinas, Wayne Olson, Richard Schneiter, and Quala Champagne is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 18th day of October, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge